**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| JAVIER MARTINEZ, | No. 21-35023 |
| *Petitioner-Appellant*, v. | D.C. No. 2:20-cv-00780-TSZ |
| LOWELL CLARK, Warden, Northwest Detention Center; NATHALIE ASHER, Tacoma Field Office Director, United States Immigration and Customs Enforcement; ALEJANDRO N. MAYORKAS, Secretary, Department of Homeland Security; MERRICK B. GARLAND, Attorney General, | OPINION |
| *Respondents-Appellees*. | |

On Remand from the United States Supreme Court

Argued and Submitted September 24, 2024
San Francisco, California

Filed December 27, 2024

Before: Jacqueline H. Nguyen, Eric D. Miller, and Patrick
J. Bumatay, Circuit Judges.

Opinion by Judge Bumatay;
Concurrence by Judge Bumatay

# SUMMARY[*]

## Immigration Immigration/Habeas/Detention

On remand from the United States Supreme Court, the panel affirmed the district court's denial of Javier Martinez's habeas petition challenging his immigration detention. The panel held that federal courts have jurisdiction to review the Board of Immigration Appeals' determination that an alien is a "danger to the community," but concluded that the BIA did not abuse its discretion or err in concluding that Martinez was such a danger.

Martinez was detained under 8 U.S.C. § 1226(c), which provides for mandatory detention of aliens with certain criminal convictions. After Martinez filed a habeas petition, the district court ordered a bond hearing, reasoning that Martinez's prolonged detention violated due process. An immigration judge denied bond, the BIA affirmed, and Martinez brought the instant habeas petition. The district court asserted jurisdiction, but denied habeas relief.

This panel previously held that the district court lacked jurisdiction to review the "dangerousness" determination under 8 U.S.C. § 1226(e), which bars review of a "discretionary judgment" regarding detention. The Supreme Court granted certiorari, vacated this court's judgment, and remanded for consideration of its intervening decision in *Wilkinson v. Garland*, 601 U.S. 209 (2024), which clarified

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

that the application of a statutory standard to an established set of facts is a reviewable mixed question of law and fact.

The panel concluded that *Wilkinson* compels the conclusion that application of the "dangerousness" standard is a reviewable mixed question. The panel explained that "dangerousness" is not so different from the standard the Supreme Court found reviewable in *Wilkinson* or the standard this court later found reviewable in *Zia v. Garland*, 112 F.4th 1194 (9th Cir. 2024), because the BIA's caselaw sets out nine factors an IJ may consider before making the ultimate determination.

Next, the panel concluded that the applicable standard of review is the abuse-of-discretion standard, explaining that *Wilkinson* recognized that a "deferential standard of review" applies where a mixed question requires a court to immerse itself in facts. Here, the district court applied the de novo standard of review, but the court determined that that remand would be futile because the district court denied under a higher standard of review.

On the merits, the panel concluded that the BIA did not abuse its discretion, explaining that the BIA properly considered the relevant factors, and reasonably believed that Martinez's equities did not outweigh the evidence of dangerousness.

The panel also rejected Martinez's arguments that the BIA applied the wrong burden of proof and that the BIA's failure to consider alternatives to detention violated due process or was legal error.

Concurring, Judge Bumatay wrote that this case should never have gotten to this point because federal courts actually lack authority to order bond hearings for aliens

mandatorily detained under § 1226(c). However, egged on
by this court's wayward precedent, the district court believed
that due process required a bond hearing. That ruling also
led to violation of Congress's directive that "[n]o court may
set aside any action or decision. . . regarding the detention or
release of any alien or . . . denial of bond or parole." 8 U.S.C
§ 1226(e). Judge Bumatay wrote that, because this court's
precedent requires courts to defy Congress's authority and
assume an aggrandized role in immigration decisions, the
court should change it.

## COUNSEL

Robert Pauw (argued), Gibbs Houston Pauw, Seattle,
Washington; Matt Adams, Glenda M. Aldana Madrid, Leila
Kang, and Aaron Korthuis, Northwest Immigrant Rights
Project, Seattle, Washington; Lee Gelernt, American Civil
Liberties Union Foundation Immigrants' Rights Project,
New York, New York; Hannah Schoen and Cody Wofsy,
American Civil Liberties Union Foundation Immigrants'
Rights Project, San Francisco, California; for Petitioner-
Appellant.

Dana M. Camilleri (argued), Trail Attorney; Patrick J. Glen;
Anthony P. Nicastro, Assistant Director; Office of
Immigration Litigation; Brian M. Boynton, Principal Deputy
Assistant Attorney General; Civil Division, United States
Department of Justice, Washington, D.C.; for Respondents-
Appellees.

Michael K.T. Tan and Judy Rabinovitz, American Civil
Liberties Union Foundation Immigrants' Rights Project,
New York, New York; Michael Kaufman, American Civil

Liberties Union Foundation, Los Angeles, California; Ahilan Arulanantham, UCLA School of Law, Center for Immigration Law and Policy, Los Angeles, California; Jayashri Srikantiah, Stanford Law School, Immigrants' Rights Clinic, Stanford, California; Sean Commons and Alexandria Ruiz, Sidley Austin LLP, Los Angeles, California; Ava Guo, Sidley Austin LLP, Washington, D.C.; for Amici Curiae ACLU Foundation, ACLU Foundation of Southern California, and UCLA School of Law Center for Immigration Law and Policy.

Genna E. Beier and Francisco Ugarte, San Francisco Public Defender's Office, San Francisco, California; Kelsey A. Morales and Raha Jorjani, Alameda County Public Defender's Office, Oakland, California; for Amici Curiae Alameda County Public Defender's Office, Asian Americans Advancing Justice— Asian Law Caucus, Immigrant Legal Defense, Pangea Legal Services, and the San Francisco Public Defender's Office.

Matt Adams and Aaron Korthuis, Northwest Immigrant Rights Project, Seattle, Washington; Trina A. Realmuto, National Immigration Litigation Alliance, Brookline, Massachusetts; for Amicus Curiae the Northwest Immigrant Rights Project and The National Immigration Litigation Alliance.

**OPINION**

BUMATAY, Circuit Judge:

Earlier we concluded that the district court lacked jurisdiction to review a Board of Immigration Appeals ("BIA") determination that an alien was a "danger to the community" for immigration detention purposes. We relied on 8 U.S.C. § 1226(e), which precludes judicial review of a "discretionary judgment" regarding the detention of an alien. *See Martinez v. Clark*, 36 F.4th 1219, 1228 (9th Cir. 2022), *cert. granted*, *judgment vacated*, 144 S. Ct. 1339 (2024). The dangerousness determination was discretionary, we said, because it was "fact-intensive" and required "the equities to be weighed." *Id.* at 1229 (simplified). No immigration law defined "dangerousness," and the BIA offered nine factors to consider in making the determination. *Id.* at 1228 & n.1 (citing *In re Guerra*, 24 I. & N. Dec. 37, 40 (BIA 2006)). So BIA precedent appeared to only provide "malleable guidance" that did not demonstrate what was necessary to "cross[] the line into dangerousness." *Id.* at 1229–30. Thus, we held that federal courts lacked sufficient standards to review the agency's judgment. *Id.*

After our decision, the Supreme Court decided *Wilkinson v. Garland*, 601 U.S. 209 (2024). *Wilkinson* clarified the boundaries of judicial review in the immigration context. It explained that "[t]he application of a statutory legal standard . . . to an established set of facts is a quintessential mixed question of law and fact" and is reviewable. *Id.* at 212. The Supreme Court then granted the petition for certiorari here, vacated our judgment, and remanded for further consideration of *Wilkinson*'s impact on

this case. *See Martinez v. Clark*, 144 S. Ct. 1339 (2024) (mem.).

After *Wilkinson*, the determination whether an alien is "dangerous" for immigration-detention purposes is a mixed question of law and fact and is reviewable as a "question of law." *See Singh v. Holder*, 638 F.3d 1196, 1202 (9th Cir. 2011) ("Although § 1226(e) restricts jurisdiction in the federal courts . . . [,] it does not limit habeas jurisdiction over constitutional claims or questions of law."); *cf. Guerrero-Lasprilla v. Barr*, 589 U.S. 221, 227 (2020) (holding, under an analogous provision governing judicial review in immigration cases, that "questions of law" include mixed questions of law and fact); *Wilkinson*, 601 U.S. at 225 ("Today's decision announces nothing more remarkable than the fact that this Court meant what it said in *Guerrero-Lasprilla*.").

Under *Wilkinson,* the district court's review of the BIA's "dangerousness" determination is for abuse of discretion, and our review of the district court's denial of habeas relief is de novo. Because the district court initially denied Martinez's habeas petition under de novo review we conclude that it would have also properly denied the petition under the correct abuse-of-discretion standard. We also affirm the denial of Martinez's two other habeas claims.

## I.

Javier Martinez, a native of Costa Rica and citizen of Nicaragua, entered the United States in 1987 as a conditional resident. Three years later, he became a lawful permanent resident. In 2000, he was convicted of conspiring to distribute cocaine under 21 U.S.C. §§ 841 and 846 and sentenced to 20 months in prison. The next year, after his release from prison, the Department of Homeland Security

("DHS") commenced removal proceedings against Martinez. An immigration judge later granted him withholding of removal.

Twelve years after his release from prison, in 2013, Martinez was once again arrested for trafficking cocaine under 21 U.S.C. §§ 841 and 846. After his arrest, a federal magistrate judge released Martinez on his own recognizance. About five months later, Martinez pleaded guilty to the drug charge. He was released for three months before sentencing. At the sentencing hearing, the district court noted that it was "impressed" with Martinez's ability to control himself and to "avoid the pitfalls" while he was "out on bond." The district court observed that it would not have released Martinez (as the magistrate judge did), but that Martinez did well with the opportunity. Martinez remained drug-free and complied with all the conditions of his release. Based on his efforts at rehabilitation, the district court sentenced Martinez to 60 months in prison. The district court also allowed Martinez to self-report to prison, and he did so a month later. While in prison, Martinez earned his GED, took vocational classes, and attended Bible studies. He also participated in a drug-treatment program and received counseling for his drug addiction.

In early 2018, DHS reopened Martinez's removal proceedings based on his 2013 conviction. After his release in April 2018, Martinez was taken directly into DHS custody and held without bond. After about six months, Martinez received a bond hearing, but the presiding immigration judge determined that he did not have jurisdiction to release Martinez because he was subject to mandatory detention under 8 U.S.C. § 1226(c).

In November 2018, Martinez filed a federal habeas petition seeking immediate release or, in the alternative, an individualized bond hearing before an immigration judge. The district court ordered that Martinez receive a bond hearing. *Martinez v. Clark*, 2019 WL 5962685, at \*1 (W.D. Wash. Nov. 13, 2019). The district court reasoned that Martinez's prolonged mandatory detention under § 1226(c) violated due process. *Id.* To comply with due process, the district court ordered "the government to show by clear and convincing evidence that [Martinez] presents a flight risk or a danger to the community at the time of the bond hearing." *Id.*

In November 2019, an immigration judge held a bond hearing for Martinez and denied him bond. The immigration judge ruled that the government had met its burden of showing by clear and convincing evidence that Martinez was a danger to the community and a flight risk. In making the dangerousness determination, the immigration judge evaluated Martinez's mitigating evidence, such as his successful pre-incarceration release on bond, the district court's statements during sentencing, his efforts at rehabilitation, his family ties, and his strong community support. Still, the immigration judge found Martinez's two convictions for drug trafficking to be dispositive. The immigration judge also determined that conditional parole was not appropriate for Martinez.

On appeal, the BIA ruled that Martinez was ineligible for release on bond based on the "totality of the evidence." The BIA agreed with the immigration judge that the government sustained its burden to show that Martinez was a danger to the community by clear and convincing evidence. In doing so, the BIA emphasized that it had "long acknowledged the dangers associated with the sale and distribution of drugs"

and found that Martinez's repeated drug-trafficking convictions provided "strong evidence" that he was dangerous. The BIA also acknowledged Martinez's rehabilitation efforts, but it found that his good behavior for "the approximately 7 years he has been detained in either prison or DHS custody d[id] not indicate that he will not revert to his old habits of drug use and trafficking upon his release." The BIA did not reach the immigration judge's alternative conclusion that Martinez posed a flight risk.

Martinez then brought this federal habeas petition under 28 U.S.C. § 2241, seeking release from DHS detention. Martinez raised three claims: (1) clear and convincing evidence did not show he is a danger to the community; (2) the BIA applied an incorrect burden of proof at his hearing; and (3) the BIA failed to consider alternatives to detention, such as conditional parole. The district court asserted jurisdiction over all three claims and denied habeas relief.

Martinez now appeals. We have jurisdiction over the appeal under 28 U.S.C. § 1291 and § 2253(a). We review the denial of a habeas petition de novo, *Padilla-Ramirez v. Bible*, 882 F.3d 826, 828 (9th Cir. 2017), any underlying legal questions de novo, and factual questions for clear error, *Singh*, 638 F.3d at 1202–03.

## II.

We first address Martinez's claim that the BIA erred in concluding that clear and convincing evidence showed that he was a "danger to the community." We have jurisdiction over the claim and conclude that the BIA didn't abuse its discretion in considering Martinez a danger.

**A.**

We begin with jurisdiction. Martinez was mandatorily detained under 8 U.S.C. § 1226(c), so 8 U.S.C. § 1226(e) governs any review of his detention. That section provides:

> The Attorney General's discretionary judgment regarding the application of [§ 1226] shall not be subject to review. No court may set aside any action or decision by the Attorney General under this section regarding the detention or release of any alien or the grant, revocation, or denial of bond or parole.

8 U.S.C. § 1226(e). Under § 1226(e), an alien may not "challeng[e] a 'discretionary judgment' by the Attorney General or a 'decision' that the Attorney General has made regarding his detention or release" in federal court. *Jennings v. Rodriguez*, 583 U.S. 281, 295 (2018) (plurality opinion) (simplified).

The Ninth Circuit has clarified the federal courts' jurisdiction over "constitutional claims or questions of law" regarding immigration detention under § 1226. *Singh*, 638 F.3d at 1202. We ruled that § 1226(e) did not strip federal courts of "traditional habeas jurisdiction." *Id.* (relying on *Demore v. Kim*, 538 U.S. 510 (2003)). We explained that § 1226(e) "restricts jurisdiction only with respect to the executive's exercise of discretion" but that discretionary judgment does not include constitutional claims or questions of law. *Id.*

So we must decide whether the BIA's determination that Martinez is a "danger to the community" is a "discretionary

judgment" or a "question of law." For this question, we look
to *Wilkinson,* which clarified the distinction between
questions of law, mixed questions of law and fact, and
questions of fact in the immigration context.

*Wilkinson* examined the "exceptional and extremely
unusual hardship" requirement for cancellation of removal
under 8 U.S.C. § 1252(a)(2). 601 U.S. at 217. If an alien
shows this "hardship" to a U.S.-citizen or permanent-
resident family member, then the alien may be eligible for
discretionary cancellation of removal. *Id.* at 212–13.
*Wilkinson* called the hardship determination the "first step"
in the cancellation-of-removal determination, which allows
the IJ to go to "step two" and decide whether to exercise
discretion to cancel removal in a particular case. *Id.* at 213.

Cancellation of removal also has both a jurisdiction-
stripping and jurisdiction-restoring provision. Section
1252(a)(2)(B)(i) strips courts of jurisdiction to review
certain judgments by the Attorney General, including
"judgments regarding the granting of discretionary relief" of
"cancellation of removal." *Id.* at 218 (simplified). Then
§ 1252(a)(2)(D) restores judicial review for "constitutional
claims or questions of law" involved in cancellations of
removal. *Id.*

The Court ruled that the "hardship" determination fell
within the jurisdiction-restoring provision. Under BIA
precedent, the "hardship" standard requires a showing that a
relative "would suffer hardship that is substantially different
from or beyond that which would ordinarily be expected to
result from their removal." *Id.* at 215 (simplified). To
evaluate that, an IJ must consider a "range of factors,
including the age and health of the qualifying family
member." *Id.* (simplified). But ultimately, "[a]ll hardship

factors [are] considered in the aggregate" to make the determination. *Id.* (simplified).

The hardship determination, the Court said, was not "discretionary," *id.* at 218, because the application of the statutory "hardship" standard to a "given set of facts presents a mixed question of law and fact." *Id.* at 221. To get there, the Court reasoned that the "hardship" standard resembled the "due diligence" standard for equitable tolling, which the Court already established was a "mixed question." *Id.* at 222 (noting that the "due diligence" standard requires a court to "evaluate whether a noncitizen was adequately conscientious in his pursuit of a filing deadline"). Although both standards "require[d] close engagement with the facts," they each represented a mixed question because a court had to "assess whether an IJ correctly applied the statutory standard to a given set of facts." *Id.* at 221. And under the Court's precedent, "[m]ixed questions of law and fact, even when they are primarily factual, fall within the statutory definition of 'questions of law' in § 1252(a)(2)(D)." *Id.* at 225. So both the "due diligence" standard and the "hardship" standard are questions of law. And we've recently said that the "good faith marriage" determination under 8 U.S.C. § 1186a(c) also constitutes a legal standard. *Zia v. Garland*, 112 F.4th 1194, 1201–02 (9th Cir. 2024).

In contrast, "factual question[s] raised in an application for discretionary relief" remain unreviewable. *Wilkinson*, 601 U.S. at 222. The jurisdiction-stripping provision still precludes federal courts from reviewing "underlying factual determinations" in a claim for cancellation of removal, like "credibility, the seriousness of a family member's medical condition, or the level of financial support a noncitizen currently provides." *Id.* at 225. Likewise, factfinding underlying a denial of immigration relief, such as whether

14    MARTINEZ V. CLARK

an alien intentionally lied on a state driver's license form, is unreviewable. *See Patel v. Garland*, 596 U.S. 328, 331 (2022). And the decision whether to revoke approval of a visa petition based on a sham-marriage determination is a "discretionary decision" that falls within the jurisdiction-stripping provision of § 1252(a)(2)(B)(ii). *Bouarfa v. Mayorkas*, No. 23-583, slip op. at 1–2 (Dec. 10, 2024).

With this background in mind, we turn to the "dangerousness" determination. To determine whether an alien is a danger to the community or a risk of flight, an IJ weighs nine factors under BIA precedent. *Guerra*, 24 I. & N. Dec. at 40. The nine factors an IJ "may" consider "include any or all of the following:"

> (1) whether the alien has a fixed address in the United States; (2) the alien's length of residence in the United States; (3) the alien's family ties in the United States, and whether they may entitle the alien to reside permanently in the United States in the future; (4) the alien's employment history; (5) the alien's record of appearance in court; (6) the alien's criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses; (7) the alien's history of immigration violations; (8) any attempts by the alien to flee prosecution or otherwise escape from authorities; and (9) the alien's manner of entry to the United States.

*Id*. And "[t]he *Guerra* factor most pertinent to assessing dangerousness" is "the alien's criminal record, including the

MARTINEZ V. CLARK                    15

extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses." *Singh*, 638 F.3d at 1206 (quoting *Guerra*, 24 I. & N. Dec. at 40).

*Wilkinson* compels the conclusion that application of the "dangerousness" standard is a reviewable mixed question. Even though what constitutes "dangerousness" is malleable and involves agency discretion, *Wilkinson* instructs that this is still a legal standard so long as federal courts can "assess whether an IJ correctly applied the statutory standard to a given set of facts." 601 U.S. at 221. Indeed, "dangerousness" is not so different from the "exceptional and extremely unusual hardship" standard or the "good faith marriage" standard. All provide multiple factors for an IJ to consider before making the ultimate determination. For instance, the "hardship" determination includes eight factors "proper" for an IJ to "consider." *See In re Monreal-Aguinaga*, 23 I. & N. Dec. 56, 63–64 (BIA 2001) (simplified) (listing factors such as age, family ties, length of residence in United States, health, political and economic conditions in country of removal, others means of adjusting status, involvement in community, and immigration history). Likewise, the "good faith marriage" determination involves a review of the parties' combined finances, length of cohabitation, birth certificates for any children, and "other evidence deemed pertinent to the director." 8 C.F.R. § 1216.5(e)(2); *see also Zia*, 112 F.4th at 1201. These multifactorial lists provide no guidance on what combination of factors constitutes "exceptional and extremely unusual hardship" or a "good faith marriage." In fact, they grant an IJ broad discretion to weigh the listed factors and add any factors not mentioned or discount those that are less probative. The same goes for the "dangerousness" determination. It is also a mixed question of fact and law.

The government suggests that the "dangerousness" determination is closer to the discretionary "step two" determination of the cancellation-of-removal process, which *Wilkinson* says is unreviewable. It is true that Martinez is detained under the mandatory detention provision of § 1226(c), which requires detention for certain "criminal aliens." As we have said, "noncitizens subject to mandatory detention under [§ 1226(c)] are not statutorily eligible for release on bond during the judicial phase of the proceedings, except under the narrow circumstances defined by § 1226(c)(2)." *Avilez v. Garland*, 69 F.4th 525, 535 (9th Cir. 2023). And so, as a statutory matter, the detention process under § 1226(c) doesn't compare exactly to the cancellation-of-removal process, which requires the IJ to find the requisite "hardship" at step one and to exercise discretion at step two. Under § 1226(c), if an alien is convicted of a qualifying offense, then detention is automatic and nondiscretionary.

But the district court here ordered the bond hearing under the Due Process Clause. *Martinez*, 2019 WL 5962685, at *1. The district court ruled that "due process requires the government to show by clear and convincing evidence that the detainee presents a flight risk or a danger to the community at the time of the bond hearing." *Id.* That determination did not leave room for an added layer of agency discretion; if the BIA found that Martinez was not dangerous, it would have had to release him. *See id.; see also Singh*, 638 F.3d at 1202 (ordering release if the BIA did not find, by clear and convincing evidence, that alien was dangerous or a flight risk). So the "dangerousness" determination is unlike the fully discretionary second step under § 1229b(b)(1) and is reviewable.

## B.

### 1.

Because we have jurisdiction here, we must next decide the standard of review for a "dangerousness" determination. The district court concluded that "the ultimate determination of whether th[e] facts amount to clear and convincing evidence of flight risk and dangerousness should be reviewed de novo." *Wilkinson*, however, recognized that a mixed question that "requires a court to immerse itself in facts . . . suggests a more deferential standard of review." 601 U.S. at 222. *Zia* confirmed that "our review is deferential" for a "primarily factual question," and it held that, "under a deferential standard," the BIA did not err in concluding the alien failed to establish a good-faith marriage. 112 F.4th at 1202.

The same principle applies here. When questions require a close review of agency-found facts, like the "dangerousness" determination, we review for an abuse of discretion. *Cf. Konou v. Holder*, 750 F.3d 1120, 1127 (9th Cir. 2014) (applying abuse of discretion standard to determination of whether an alien was convicted of a particularly serious crime) (simplified). That deference reflects Congress's decision to cabin judicial review in removal proceedings. *See Patel*, 596 U.S. at 332 ("Congress has sharply circumscribed judicial review of the discretionary-relief process."). And we tread especially carefully in this area where Congress sought to eliminate judicial review.

### 2.

As explained, the district court erroneously reviewed Martinez's habeas petition de novo instead of for abuse of

18          MARTINEZ V. CLARK

discretion. But because the district court denied habeas
relief under a higher standard of review, remand to the
district court to review the BIA's "dangerousness"
determination for abuse of discretion would be futile. We
conclude that had the district court applied the proper
standard of review, it would have correctly determined that
the BIA did not abuse its discretion in finding Martinez
dangerous.

Under an abuse of discretion standard, "we cannot
reweigh evidence . . . [but] can [only] determine whether the
BIA applied the correct legal standard." *Konou*, 750 F.3d at
1127 (simplified). The BIA relied on the "totality of the
evidence" to determine that Martinez's repeated convictions
for conspiracy to distribute cocaine, which occurred thirteen
years apart, provided compelling evidence that he was a
danger to the community. The BIA pointed to prior
decisions in which it has highlighted the destructive effects
of narcotics. For example, the BIA has concluded,

> Illicit narcotic drugs sold in the United States
> ruin or destroy the lives of many American
> citizens each year. Apart from the
> considerable number of people in this
> country who die of overdoses of narcotics or
> who become the victims of homicides related
> to the unlawful traffic of drugs, many others
> become disabled by addiction to heroin,
> cocaine, and other drugs.

*In re Y-L-*, 23 I. & N. Dec. 270, 275 (BIA 2002).
Distributing deadly drugs is a clear danger to the community.
And the BIA reasonably believed that Martinez's
rehabilitative efforts and recent compliance with the law

didn't outweigh this "strong evidence" of danger.  Thus, the
BIA properly considered the factors set forth in *Guerra*, and
it did not abuse its discretion in finding, by clear and
convincing evidence, that Martinez was a danger to the
community.

**III.**

We now turn to Martinez's next claim—that the BIA
erred by applying the wrong burden of proof.  We have
jurisdiction over this claim as it's a "question[] of law."
*Singh*, 638 F.3d at 1202.  Martinez contends that the BIA
failed to apply the correct clear-and-convincing burden of
proof and review all the evidence in the record.  He also
alleges that the BIA impermissibly shifted the burden of
proof to him.  We disagree.

Generally, in the absence of any red flags, we take the
BIA at its word.  For example, "[w]hen nothing in the record
or the BIA's decision indicates a failure to consider all the
evidence," we will rely on the BIA's statement that it
properly assessed the entire record.  *Cole v. Holder*, 659 F.3d
762, 771 (9th Cir. 2011).  We do not require the BIA to
"discuss each piece of evidence submitted."  *Id.*  Similarly,
we accept that the BIA "applied the correct legal standard"
if the BIA "expressly cited and applied [the relevant
caselaw] in rendering its decision."  *See Mendez-Castro v.
Mukasey*, 552 F.3d 975, 980 (9th Cir. 2009).  But when there
is an indication that something is amiss, like if the BIA
"misstat[es] the record" or "fail[s] to mention highly
probative or potentially dispositive evidence," we do not
credit its use of a "catchall phrase" to the contrary.  *Cole*,
659 F.3d at 771–72.

There are no such red flags here.  At the outset of its
decision, the BIA properly noted that the government bore

the burden to establish by clear and convincing evidence that
Martinez is a danger to the community.  It then reviewed the
record, including Martinez's drug trafficking convictions,
and concluded there was "strong evidence" of his
dangerousness.      It credited Martinez's significant
rehabilitation efforts, such as keeping a clean record while
on pretrial release and in prison.  But it concluded, under
"the totality of the evidence," that the serious nature of
Martinez's convictions and his history of reoffending, even
after several years of sobriety, rendered him a danger to the
community.    Contrary to Martinez's claim, the BIA
explicitly noted the evidence of his release on his own
recognizance and his self-report to prison during his 2013
criminal proceedings.    Thus, we conclude that the BIA
applied the correct burden of proof here.

## IV.

Lastly, we consider Martinez's third claim that the BIA
had to consider alternatives to detention, such as conditional
parole, before denying him bond.  Martinez suggests that the
BIA must import consideration of conditions of release from
the criminal pretrial release context, such as GPS
monitoring, drug testing, and counseling, to the immigration
custody context.  *See* 18 U.S.C. § 3142(c).  In Martinez's
view, failing to do so violates due process or constitutes legal
error—over which we have jurisdiction.  *See Singh*, 638 F.3d
at 1202.  We reject Martinez's argument.

Due process does not require immigration courts to
consider conditional release when determining whether to
continue to detain an alien under § 1226(c) as a danger to the
community.   In *Singh*, we addressed the due process
requirements for bond hearings for aliens subject to
prolonged detention.  638 F.3d at 1203–10.  We held that

MARTINEZ V. CLARK                    21

due process requires immigration courts to make
contemporaneous records of bond hearings, *id.* at 1200, and
the government to prove dangerousness or risk of flight by
clear and convincing evidence, *id.* at 1200, 1205. We then
noted that these "greater procedural protections" are enough
to safeguard an alien's due process rights and "justify [the]
denial of bond." *Id.* at 1207.

Nowhere in *Singh* did we suggest that due process also
mandates that immigration courts consider release
conditions or conditional parole before deciding that an alien
is a danger to the community. *Singh* offers the high-water
mark of procedural protections required by due process, and
we see no reason to extend those protections any further
here.

Relying on *Hernandez v. Sessions*, 872 F.3d 976 (9th
Cir. 2017), Martinez argues that conditions of release must
be considered to ensure that detention is reasonably related
to the government's interest in protecting the public. That
case is inapplicable here. In *Hernandez*, the plaintiff aliens
complained that neither their financial circumstances nor
alternative release conditions were considered before their
bond decisions were made, even though they were
determined not to be dangerous or flight risks. 872 F.3d at
984–85, 990–91. While the government had a legitimate
interest in protecting the public and ensuring appearances in
immigration proceedings, we held that detaining an indigent
alien without consideration of financial circumstances and
alternative release conditions was "unlikely to result" in a
bond determination "reasonably related to the government's
legitimate interests." *Id.* at 991. The analysis is different
here. *Cf. id.* at 994 (relying on *absence* of dangerousness or
flight-risk determination in procedural due process analysis).

Martinez was found to be a danger to the community, so his detention is clearly "reasonably related" to the government's interest in protecting the public. *See id.* at 991.

## V.

For these reasons, we affirm the denial of the petition.

**AFFIRMED.**

---

BUMATAY, Circuit Judge, concurring:

While I now agree that our court has jurisdiction to review whether an alien is a "danger to the community" under binding Supreme Court precedent, we never should have gotten to this point. That's because we had no authority to order a new bond hearing for a "criminal alien[]" subject to mandatory detention under 8 U.S.C. § 1226(c). That provision provides that an alien who commits certain offenses "shall" be taken into custody. 8 U.S.C. § 1226(c)(1). Instead, egged on by some of our wayward precedent, the district court believed that due process requires that Javier Martinez receive a bond hearing (and be potentially released) simply because his removal proceeding had become "prolonged." *See Martinez v. Clark*, 2019 WL 5962685, at *1 (W.D. Wash. 2019). But this defies Congress's clear command and assumes an outsized role for federal courts over immigration-detention decisions. Simply put, the Due Process Clause doesn't grant federal courts the freedom to refashion statutory detention requirements in the immigration context.

And the due process ruling here leads to a second problem—violation of Congress's directive that "[n]o court may set aside any action or decision by the Attorney

General . . . regarding the detention or release of any alien or
. . . denial of bond." 8 U.S.C. § 1226(e). But under the
district court's due process directive, federal courts are
empowered to do just that—set aside the Executive's
detention decisions. For instance, if federal courts disagreed
with the BIA's assessment of Martinez's dangerousness,
then presumably the next step would have been to order his
release. But we circumvent Congress's will by claiming that
authority. And our precedent supporting this expansive
authority over detention decisions is wrong. Namely, *Singh
v. Holder*, 638 F.3d 1196, 1202 (9th Cir. 2011), held that
"[a]lthough § 1226(e) restricts jurisdiction in the federal
courts in some respects, it does not limit habeas jurisdiction
over constitutional claims or questions of law." But that is
too broad. Nothing allows us to completely ignore
§ 1226(e)'s direct command.

These errors flow from a flawed conception of due
process and our role in immigration proceedings. We ought
to "defer to the political branches" on immigration decisions
because they are "of a character more appropriate to either
the Legislature or the Executive than to the Judiciary."
*Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1215 (9th Cir.
2022) (Bumatay, J., concurring) (quoting *Mathews v. Diaz*,
426 U.S. 67, 81 (1976)). That's because "any policy toward
aliens is vitally and intricately interwoven with
contemporaneous policies . . . of foreign relations, the war
power, and the maintenance of a republican form of
government." *Demore v. Kim*, 538 U.S. 510, 522 (2003)
(quoting *Mathews*, 426 U.S. at 81 n.17). We should have
respected our limited role in this area. Yet we deepen the
affront to the separation of powers by aggrandizing our
authority.

**I.**

Despite Congress's decision to detain all criminal aliens during removal proceedings, the district court believed that due process requires bond hearings (and potential release) for an alien whose detention becomes "prolonged." It reasoned, "despite the statutory language of 8 U.S.C. § 1226(c), the Ninth Circuit offers 'grave doubts that any statute that allows for arbitrary prolonged detention without any process is constitutional.'" *Martinez v. Clark*, 2019 WL 5962685, \*1 (W.D. Wash. Nov. 13, 2019) (quoting *Rodriguez v. Marin*, 909 F.3d 252, 256 (9th Cir. 2018)). But that's wrong.

Due process doesn't require bond hearings for criminal aliens mandatorily detained under § 1226(c)—even for prolonged periods. "As a matter of text, structure, and history, Congress may authorize the government to detain removable aliens throughout their removal proceedings." *Rodriguez Diaz*, 53 F.4th at 1214 (Bumatay, J., concurring). And "[n]othing in the Due Process Clause requires individualized bond determinations beyond what Congress has established." *Id.* at 1214. That's because, in the immigration context, "Congress regularly makes rules that would be unacceptable if applied to citizens." *Demore*, 538 U.S. at 521 (simplified). So while mandatory detention may not be allowed for criminal purposes and most civil contexts, immigration stands apart from those areas.

Because Congress possesses "considerable authority over immigration matters," mandatory detention under § 1226(c) has been upheld "as a constitutionally valid aspect of the deportation process." *Id.* at 523 (simplified). Thus, when detention is for an "immigration purpose," "Congress may grant the Executive the authority to detain aliens during

MARTINEZ V. CLARK 25

removal proceedings—with or without bond hearings."
*Rodriguez Diaz*, 53 F.4th at 1218 (Bumatay, J., concurring).
"And so long as the government follows reasonable,
individualized determinations to ensure that the alien is
properly in removal proceedings, due process does not
require more bond hearings *even after a prolonged period*."
*Id.* (emphasis added).

Absent any allegation that the extended detention here is
unrelated to an immigration purpose, the mere fact that
detention is "prolonged" doesn't alter the statutory
framework. Indeed, in our circuit, the median processing
time for an immigration case to reach a merits determination
is 39 months. Does that mean that any immigration
proceeding appealed in the Ninth Circuit would
automatically invalidate mandatory detention under
§ 1226(c)? Why should our delays in processing cases
impact Congress's design?

And dicta from *Rodriguez v. Marin* isn't a basis to rule
otherwise. First, the *Rodriguez* order was written after the
Supreme Court expressly rejected our view that immigration
statutes must allow for individualized bond hearings after
detentions become prolonged. 909 F.3d at 255. Second,
*Rodriguez*'s musings were mainly justified by a *criminal law*
ruling. *Id.* at 256–57 (quoting *United States v. Salerno*, 481
U.S. 739, 755 (1987)). But that's irrelevant when it comes
to immigration law. *See Demore*, 538 U.S. at 521. Third,
*Rodriguez* cites *Zadvydas v. Davis*, 533 U.S. 678, 690
(2001), for the proposition that "[c]ivil detention" violates
due process outside of "certain special and narrow
nonpunitive circumstances." *Rodriguez*, 909 F.3d at 257
(simplified). But *Zadvydas* only holds that immigration
detention must "serve its purported immigration purpose,"
*Demore*, 538 U.S. at 526, and there is no argument that the

detention of criminal aliens serves no immigration purpose. Finally, *Rodriguez* quotes at length Justice Breyer's dissenting opinion in *Jennings v. Rodriguez*, 583 U.S. 281 (2018). *Rodriguez*, 909 F.3d at 257 (quoting *Jennings*, 583 U.S. at 330) (Breyer, J., dissenting). But respectfully, a dissenting view is no reason to upset congressional will.

In contrast, *Rodriguez* ignored the long history of deference to the political branches in administering the immigration system. *See Demore*, 538 U.S. at 538–40 (O'Connor, J., concurring); *Rodriguez Diaz*, 53 F.4th at 1215–18 (Bumatay, J., concurring). Thus, no extra bond hearing was due here.

## II.

Second, our erroneous precedent leads to a head-on clash with Congress's immigration design. In *Singh*, we asserted jurisdiction over any "constitutional question" or "question of law" involving an *individualized* detention "decision" despite the clear prohibition of § 1226(e). *Singh*, 638 F.3d at 1202. Recall that § 1226(e) provides that "[t]he Attorney General's discretionary judgment regarding the application of this section shall not be subject to review" and "[n]o court may set aside any action or decision by the Attorney General under this section regarding the detention or release of any alien or the grant, revocation, or denial of bond or parole."

The Court has been clear on the meaning of this provision: § 1226(e) precludes an alien from challenging "a 'discretionary judgment' by the Attorney General or a 'decision' that the Attorney General has made regarding his detention or release." *Demore*, 538 U.S. at 516 (simplified). In other words, the jurisdiction-stripping provision prohibits federal courts from overturning the *individualized* "decision" to detain a particular alien. But the Court also

affirmed review of limited constitutional questions—the provision doesn't preclude "challenges [to] the statutory framework that permits [the alien's] detention without bail." *Id.* at 517 (reviewing a "constitutional challenge to the legislation authorizing . . . detention without bail"). So a challenge to the "statutory framework" of immigration detention "as a whole," such as whether there is a statutory right to periodic bond hearings, remains reviewable. *See Jennings*, 583 U.S. at 295–96.

But *Singh* improperly expanded our authority beyond that. In that case, an alien challenged the result of his individualized bond hearing, arguing that the BIA violated his procedural due process right by using the wrong burden of proof. *Singh*, 638 F.3d at 1201. *Singh* agreed with the alien and ordered the alien's "release" from detention unless the BIA afforded him a new bond hearing under the court's newly fashioned due process standards. *Id.* at 1202. *Singh* justified this broad authority based on "traditional habeas jurisdiction" and claimed that § 1226(e) "restricts jurisdiction only with respect to the executive's exercise of discretion." *Id.* It then broadly held that § 1226(e) doesn't "limit habeas jurisdiction over constitutional claims or questions of law." *Id.*; *see also Leonardo v. Crawford*, 646 F.3d 1157, 1160 (9th Cir. 2011) (asserting jurisdiction over an individual alien's claims for constitutional and legal error).

*Singh* didn't properly respect Congress's will here. Contrary to *Singh*'s claim, *Demore* didn't restore "traditional habeas jurisdiction" under § 1226(e). *Demore* only held challenges to the *statutory* scheme of detention under § 1226(c) were reviewable. This makes some textual sense because the statutory scheme isn't within the Executive's "discretionary judgment," "action," or

"decision." *Demore*, 538 U.S. at 516. But § 1226(e) still precludes any challenges to "operational decisions" rather than the "legislation establishing the framework for those decisions." *Id.* at 517 (simplified). Thus, *Demore* reinforced that Congress stripped our jurisdiction over individualized detention decisions. It didn't open the door to the type of judicial review that *Singh* asserted.

Even if *Demore* permits constitutional challenges to the statutory framework of detention, the Court has never endorsed judicial review over *all* constitutional or legal questions. After all, not all constitutional or legal challenges target the detention's statutory framework. Many, including the ones raised by Martinez here, just appeal BIA decisions in an individual alien's bond hearing, such as whether the BIA employed the proper burden of proof or correctly analyzed a legal standard. Not only did *Singh* assert jurisdiction over these "operational decisions," it also claimed the extraordinary authority to "release" any alien detained contrary to our court's wishes. 638 F.3d at 1202. Claiming the authority to release individual aliens directly contradicts § 1226(e)'s express prohibition on "sett[ing] aside" a "decision" of the Executive "regarding the detention . . . of any alien." Yet *Singh* failed to grapple with this explicit statutory prohibition. Indeed, "[i]t cannot seriously be maintained . . . that 'no court' does not really mean 'no court,' or that a decision of the Attorney General may not be 'set aside' in actions filed under the Immigration and Naturalization Act but may be set aside on habeas review." *Demore*, 538 U.S. at 535 (O'Connor, J., concurring). We should have given those words their plain meaning and recognized that we lack authority to set aside an individualized decision to detain a particular alien—no matter whether it involves a question of law or not.

* * *

Because our precedent requires us to defy Congress's authority and assume an aggrandized role in immigration decisions, we should change it.